J-S45016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ESTATE OF SHIRLEY M. EPPLEY, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: JOHN STULL | No. 1968 MDA 2014 |

Appeal from the Order Entered on November 13, 2014
In the Court of Common Pleas of York County
Orphans' Court at No.: 6713-0178

BEFORE:  BOWES, J., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:　　　　　　**FILED SEPTEMBER 28, 2015**

John Stull ("Appellant") appeals the orphans' court's October 27, 2014 order confirming the first and final accounts of Daryl Stull, II, serving as executor of the estate and successor trustee of the revocable *inter vivos* trust of Shirley M. Eppley ("Decedent").  For the reasons that follow, we affirm.

The orphans' court has provided the following account of this case's factual background and procedural history:

> [Decedent] died January 23, 2013, leaving a Last Will and Testament dated April 8, 2005.  Decedent was predeceased by her husband, Phillip Eppley, who died June 20, 2008.[1]  Decedent was survived by her two children, Daryl Stull, II[,] and [Appellant].  Articles II and III of Decedent's Last Will and Testament provide for an equal distribution of her entire estate to her two children.  Article VI appoints Daryl Stull, II[,] as the sole executor.

---

[*]　　Former Justice specially assigned to the Superior Court.

_____

1 We note [that] Phillip Eppley left a Last Will and Testament dated April 8, 2005[,] in which he left his entire estate to Decedent. Decedent was granted Letters Testamentary to administer said estate.

The York County Register of Wills granted Letters Testamentary to Daryl Stull, II (the "Executor")[,] on January 30, 2013. The Executor subsequently filed a Petition for Adjudication and First and Final Accounting [on] June 4, 2014. His brother, [Appellant], filed objections [on] August 6, 2014. Appellant's six objections challenged Executor's accounting of Decedent's personal property and took issue with the inheritance tax positions taken by the Executor. The Executor filed an Answer to the Objections on August 22, 2014[,] maintaining that his actions were appropriate and in accordance with law.

A status conference was held on August 25, 2014, followed by an evidentiary hearing on October 27, 2014, at which time [the orphans' court] dismissed all of Appellant's [o]bjections and signed the proposed [a]djudication. Appellant proceeded to file [e]xceptions on November 6, 2014, alleging [that the orphans' court] erred by denying Appellant's objections with respect to a particular item of personal property—specifically, a Flying Tigers World War II jacket (the "Jacket"). [The court] denied the [e]xceptions on November 13, 2014, and the instant appeal followed.

Although at least six distinct issues were presented in Appellant's [o]bjections, his [concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)[1]] indicates he intends to pursue only one of those claims on appeal. The appeal is therefore limited to [the orphans' court's] ruling with respect to the Jacket. Appellant alleges [that the orphans' court] erred by (i) finding the Jacket was an asset of the Decedent's estate; (ii) accepting the Executor's valuation of the Jacket; and (iii) finding the Executor properly reported the Jacket to the Department of Revenue for inheritance tax purposes.

_____

1    The trial court issued its Rule 1925 order on November 25, 2014. Appellant timely complied on December 15, 2014.

The facts surrounding the Jacket are as follows. The Jacket was originally issued to and owned by Phillip Eppley, who donned the Jacket on flight missions in China during World War II. The Jacket has since become valuable memorabilia and is the subject of the dispute between the parties. Following Phillip Eppley's death in 2008, the Decedent possessed the Jacket and kept the same at her residence. Appellant removed the Jacket from Decedent's residence in November 2012, approximately two months prior to the Decedent's passing. The Appellant retained possession of the Jacket for at least one and a half years thereafter. The Executor made attempts to effectuate the return of the Jacket to no avail. The Executor then treated the Appellant's continued possession of the Jacket as a *de facto* distribution outside the estate, advising the Department of Revenue to bill the Appellant separately for his portion of the inheritance tax. After the Department of Revenue assessed Appellant for the inheritance tax due on the Jacket, Appellant delivered the Jacket to Phillip Eppley, Jr.—the son of the Jacket's original owner. Phillip Eppley, Jr.[,] remains in possession of the Jacket.

Orphans' Court Opinion ("O.C.O."), 1/15/2015, at 1-3 (citations omitted).

The orphans' court rejected Appellant's objections, primarily because the court found little in the way of legal argument to support Appellant's contentions, and further because Appellant's arguments primarily consisted of challenges to the court's weighing of the evidence. First, the orphans' court found that Appellant had failed successfully to establish any basis upon which the court could conclude that the Jacket was not an estate asset. The court noted that the Jacket undisputedly was Decedent's husband's possession, and that Decedent's husband's will undisputedly left all of the husband's assets to Decedent. Thereafter, Decedent took possession of the Jacket, which was only interrupted nearly five years later, when Appellant removed it from Decedent's home shortly before her passing. The orphans'

court noted that Appellant failed to offer any legal authority to suggest that the Jacket was not Decedent's property at the time of her death. Instead, Appellant merely alluded to certain testimony that the Executor had always considered the Jacket to be Phillip Eppley, Jr.'s property. The orphans' court rejected this proposition:

> We note that the Executor is not trained in the law and cannot be expected to fully grasp how property may be transferred by operation of law in this context. Further, the Executor's repeated demands for the return of the [Jacket] demonstrate [that] he did in fact consider the Jacket to be part of Decedent's estate.

*Id.* at 4.

The orphans' court also rejected Appellant's dispute regarding the valuation of the Jacket for inheritance tax purposes, which the Executor, relying upon internet research, set at $24,000. The orphan's court noted that Appellant offered no support for his argument beyond criticizing the Executor's testimony on this point as too vague. Appellant provided the court with no competing valuations or other factors for the court to consider. As well, the Department of Revenue accepted the Executor's valuation. *Id.* at 5.

Finally, the orphans' court also rejected Appellant's claim that the court erred in finding that the Executor properly attributed the Jacket to Appellant in the inheritance tax return:

> As explained above, Appellant was in possession of [the Jacket] for approximately one and a half years. Further, he was in possession of the Jacket when the inheritance tax return was

filed, as well as when the tax was assessed. Appellant now attempts to argue he was only in possession of the Jacket for such a lengthy time period because he was instructed to ensure delivery of the Jacket to Phillip Eppley, Jr. We find [that] this proposition is not supported by the record, and we find the statement to lack credibility given the circumstances. [The orphans' court] therefore find[s that] the Executor properly attributed the $25,000 [*sic*] Jacket to Appellant, who was in possession of the Jacket and was refusing to return it to the estate.

*Id.* at 5-6.

Before this Court, Appellant presents his lone issue as follows: "Whether the [orphans' court] committed an error of law in its determination that the Flying Tigers Jacket was attributable to the Appellant and that the value of such jacket was as assessed?" Brief for Appellant at vii.

Our long-standing scope and standard of review are as follows:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. *In re Estate of Braun*, 650 A.2d 73, 75 (Pa. Super. 1994). Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. *Id.* Moreover, although our review of the court's factual findings is limited to considering whether those findings have support in the record, we are not constrained to give the same deference to any resulting legal conclusions. *Id.* at 76.

*In re Estate of Geniviva*, 675 A.2d 306, 310 (Pa. Super. 1996). However, we begin by addressing certain deficiencies in Appellants' brief before this Court, which echo the deficiencies noted by the orphans' court.

Rule 2101 underscores the seriousness with which we take deviations from our rules of procedure.

Briefs . . . shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief . . . of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.

Pa.R.A.P. 2101; *see Commonwealth v. Atwood*, 547 A.2d 1257 (Pa. Super. 1988) (dismissing appeal for over-long statement of the case and omission of summary of argument). We have held time and again that "[t]his Court will not act as counsel" for an appellant who has not substantially complied with our rules. *Bombary v. W. Am. Ins. Co.*, 932 A.2d 78, 93 (Pa. Super. 2007).

Rule 2111 sets forth those sections that must be included in a primary brief before this Court, and in form if not in substance Appellant has provided the requisite sections. However, there is more to an effective brief than merely checking off boxes.

For example, Appellant's statement of the case is so deficient that, if we did not have the benefit of the orphans' court's account of the facts and procedural history, we would be forced to fill considerable gaps left by Appellant's account. Rule of Appellate Procedure 2117 provides as follows:

**(a) General rule.** The statement of the case shall contain, in the following order:

(1) A statement of the form of action, followed by a brief procedural history of the case.

* * * *

(4) A closely condensed chronological statement, in narrative form, of all the facts which are necessary to be

known in order to determine the points in controversy . . . .

**(b) All argument to be excluded.** The statement of the case shall not contain any argument. It is the responsibility of appellant to present in the statement of the case a balanced presentation of the history of the proceedings and the respective contentions of the parties.

Pa.R.A.P. 2117.

Appellant's factual account provides no information regarding the procedural history of this case. Moreover, Appellant's abridged, selective, and argumentative review of the "facts" relied upon in his argument provides little guidance regarding the circumstances underlying the instant dispute. Indeed, fully half of Appellant's account is duplicative of the argument section of his brief.

As or more critically, Appellant's argument, which consists of approximately two conclusory pages, does not satisfy Rule 2119's requirements. To facilitate appellate review, our rules require an appellant to provide in his brief "such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). We have held as follows:

> This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. *Commonwealth v. Williams*, 782 A.2d 517, 532 (Pa. 2001) (Castille, J., concurring). To do so places the Court in the conflicting roles of advocate and neutral arbiter. *Id.* When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. *Commonwealth v. Luktisch*, 680 A.2d 877, 879 (Pa. Super. 1996).
>
> *Commonwealth v. B.D.G.*, 959 A.2d 362, 371-72 (Pa. Super. 2008).

- 7 -

> Moreover, "mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter." *In re J.B.*, 39 A.3d 421, 437 (Pa. Super. 2012) (quoting *Boniella v. Commonwealth*, 958 A.2d 1069 (Pa. Cmwlth. 2008)); *see Connor v. Crozer Keystone Health Sys.*, 832 A.2d 1112, 1118 (Pa. Super. 2003) (concluding that challenges of a constitutional nature are waived for failure to adequately develop the claim).

*In re S.T.S.*, 76 A.3d 24, 42 (Pa. Super. 2013) (citations modified).

Appellant's argument herein is devoid of any citations to legal authority. And although Appellant provides record citations for some of his assertions, they do not resolve into a coherent legal argument. They amount to bald challenges to the orphans' court's factual findings, which find clear support in the certified record. While we might deem Appellant's appeal waived, we will briefly review the arguments we can glean from his account.

In effect, Appellant raises two challenges to the orphans' court's decree. First, Appellant contends that Phillip Eppley, Jr.'s possession of other Flying Tiger memorabilia that formerly belonged to Phillip Eppley should have compelled the court to find that Phillip Eppley intended to gift the Jacket to Phillip Eppley, Jr., such that the Jacket was never Decedent's property. Second, Appellant challenges the court's reliance upon Phillip Eppley's will to establish that the Jacket belonged to Decedent at the time of her death, noting that Phillip Eppley's will was never made part of the certified record. We address these arguments in turn.

Phillip Eppley, Jr., undisputedly had possession of the Flying Tiger memorabilia that complemented the Jacket at the time of Decedent's death, just not of the Jacket, itself. The question is whether this established that Phillip Eppley intended before his death to gift the Jacket to Phillip Eppley, Jr.

As noted above, the orphans' court found insufficient Appellant's reliance solely upon the Executor's testimony indicating that he believed that the Jacket always belonged to Phillip Eppley, Jr. It emphasized that the Executor's lay opinion regarding the legal ownership of the Jacket was not conclusive, and noted as well that the Executor's demands for the Jacket signaled his contemporaneous belief that the Jacket belonged to the estate. *See* O.C.O. at 4. The orphans' court also found Appellant's testimony incredible in general, noting Appellant's removal of the Jacket from Decedent's possession and the fact that Appellant retained possession thereafter for approximately a year and a half before gifting it to Phillip Eppley, Jr., which he did only after the Executor asked the Department of Revenue to assess Appellant directly for inheritance tax. *Id.* at 4-5. Further bolstering this reasoning, even before Appellant took and maintained possession of the Jacket for a year and a half, beginning months before Decedent's death, Decedent had possession of the Jacket for nearly five years, reinforcing the inference that it was perceived by all to be her property following Phillip Eppley's death.

The orphans' court's findings in this regard are supported by the record. As per our standard of review, we will not supplant the orphans' court's factual findings so long as there is evidence of record to support those findings. Furthermore, Appellant provides no legal argument to suggest that the orphans' court's legal inferences from the evidence were erroneous. Accordingly, Appellant's argument in this regard is unpersuasive.

These observations effectively compel the rejection of Appellant's second argument, which focuses upon the orphans' court's putative reliance on Phillip Eppley's will to establish Decedent's ownership of the Jacket. **See id.** at 3 ("Phillip Eppley left a Last Will and Testament naming the Decedent as executrix and directing his entire estate to her."); **see also id.** at 1 n.1 (same). The orphans' court's opinion makes clear that it found that evidence entirely independent of that will established Decedent's ownership of the Jacket at the time of her passing, such that the Jacket belonged to her estate. Even if Appellant is correct that the orphans' court should not have relied upon Phillip Eppley, Sr.'s will,[2] it is not at all clear that the court did so, and the court's more detailed discussion of the other evidence in support of its ruling establishes that the court perceived numerous bases upon which

_____

[2] The estate argues that the orphans' court was entitled to take judicial notice of the will. **See** Brief for Appellee at 1 n.1 (citing Pa.R.E. 201). For the reasons cited herein, we need not determine whether the estate is correct.

to infer Decedent's ownership. Accordingly, this argument, too, is unavailing.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2015